## No. C-1047

**Ernest Crownover and Ernest Crownover, surviving spouse of Ardyce Crownover v. Theodore K. Gleichman, M.D. and Thomas Kennedy, M.D.**

(574 P.2d 497)

Decided September 19, 1977.               Rehearing denied October 11, 1977.

Mellman, Mellman and Thorn, P.C., Douglas W. Johnson, for petitioner.

Paul D. Renner, for respondent.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *Crownover v. Gleichman*, 38 Colo. App. 96, 554 P.2d 313 (1976), construing the statute of limitations which is part of the wrongful death act, section 13-21-201 to 204, C.R.S. 1973. We affirm.

The question presented for review is whether the statute of limitations, section 13-21-204, runs from the date of death or from the wrongful act, neglect, or default which resulted in the death.

The issue arises in the following factual context. Petitioner filed a wrongful death complaint against Theodore K. Gleichman, M.D., on September 12, 1973. On October 24, 1974, as the result of information obtained through discovery proceedings, petitioner moved to join Thomas Kennedy, M.D., as a defendant. That motion was granted, and on November 13, 1974, petitioner served a summons and amended complaint on respondent Kennedy. The alleged negligence of respondent Kennedy consisted of the failure to discover a cancerous growth in petitioner's wife's chest when he examined her X-rays on July 19, 1971. The cancer was discovered during surgery on April 26, 1972. Petitioner's wife died on January 7, 1973, allegedly as the result of respondent Kennedy's negligence.

Thus, it appears that the summons and amended complaint were served within two years of the date of death, but more than two years after the discovery of the cancer. Respondent Kennedy thereupon moved for summary judgment on the ground that the claim for wrongful death against him was barred by the statute of limitations. The motion was granted and the court of appeals affirmed.

The petitioner contends that a statute of limitations cannot begin to run until the cause of action accrues and that to hold that the statute of limitations, under the wrongful death act, begins to run before death occurs creates an anomalous sit. ation. It is possible, petitioner argues, for the statute of limitations to run before death occurs and thus bar the

claim. Petitioner continues:

"The Legislature obviously intended to give survivors of the deceased a cause of action for the death. This cannot be accomplished by extinguishing a cause of action before it ever arises."

Colorado adopted its wrongful death act in 1877, and it remains unchanged insofar as it is material to our discussion.[1] Colorado's wrongful death act was patterned after Lord Campbell's Act which was passed by the English Parliament in 1846.[2] Had the General Assembly followed the limitations provision as closely as it did the other provisions of Lord Campbell's Act, this controversy would not be here. However, the departure is crucial as is readily apparent from an examination of the respective texts.

Section III of Lord Campbell's Act, in pertinent part, provides:

"and that every such action shall be commenced within Twelve Calendar Months *after the death of such deceased Person*," (emphasis added).

Whereas the corresponding provision of the Colorado statute states:

"All actions provided for by sections 13-21-201 to 13-21-203 shall be brought within two years *from the commission of the alleged negligence resulting in the death for which suit is brought*." (emphasis added).

Although we could speculate as to why the first General Assembly elected not to follow Lord Campbell's Act in respect to the limitations provision, we would still be faced with the task of interpreting the language used. Although the language of our statute is arguably less precise than in the English law, it inevitably leads to the conclusion that it sets a different time for the commencement of the running of the statute of limitations.

This court did not have occasion to apply the statute until 1949 in *Fish v. Liley*, 120 Colo. 156, 208 P.2d 930 (1949). The court recognized that this statutory action is not a "survival" statute to recover for a personal injury but is a new and different kind of action to recover compensation for death. *See Prouty v. Chicago*, 250 Ill. 222, 95 N.E. 147 (1911). The court in *Fish* held that: "*the statute of limitations begins to run immediately upon the happening of the wrongful act*, . . . ." (emphasis added).

The factual situation in *Fish v. Liley* is not parallel to that here. This may have occasioned statements in *Fish* from which the petitioner drew some comfort. However, in *Franzen v. Zimmerman*, 127 Colo. 381, 256 P.2d 897 (1953), a wrongful death case where the tort occurred December 5, 1947, death occurred June 4, 1949, and the complaint was filed July 28, 1950, the court, without citing *Fish v. Liley*, said:

---

[1]G. L. §878; G. S. §1031; R. S. 08, §2057; C. L. §6303; CSA. C. 50, §2; CRS 53, §41-1-2; C.R.S. 1963, §41-1-2.
[2]Lord Campbell's Act, 9 & 10 Vict., ch. 93 (1846).

"The action not having been filed within two years after the commission of the alleged negligence, said to have resulted in the death of the injured husband, it is barred by section 4, . . . ."

The petitioner interprets our holding in *DeCaire v. Public Service Co.*, 173 Colo. 402, 479 P.2d 964 (1971), as supportive of his position. The trial court and the court of appeals cited it in support of the contrary view. The basic issue in *DeCaire* related to the question of when the injury occurred. We there held that the statute of limitations begins to run when the claimant has been injured or damaged by the alleged negligence.[3]

■ In the instant case the injury or damage from Dr. Kennedy's alleged negligence was known or should have been known on April 26, 1972, when the deceased underwent surgery and the doctors discovered large areas of cancerous tissue in her chest. It was not until November 13, 1974, that Dr. Kennedy was served with a summons, more than two years from the "discovery" of the alleged negligence. *See Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970).

■ Further, without torturing the language of the statute, it is difficult to see how one could interpret the language of the statute to mean anything other than what it says — "all actions . . . shall be brought within two years from the commission of the alleged negligence resulting in the death for which suit is brought." If this is an unfair result, the remedy for its correction lies with the General Assembly.

■ Finally, we must adhere to the well-established rule of statutory construction that when a legislature repeatedly reenacts a statute which has theretofore received a settled judicial construction, there can be no doubt as to the legislative intent. In such circumstances, it must be considered that the particular statute is reenacted with the understanding that there be adherence by the judiciary to its former construction. *Herbertson v. Russell*, 150 Colo. 110, 371 P.2d 422 (1962), and cases cited therein.

The judgment is affirmed.

MR. JUSTICE LEE and MR. JUSTICE ERICKSON do not participate.

MR. JUSTICE CARRIGAN dissents.


MR. JUSTICE CARRIGAN dissenting:

I respectfully dissent.

Judge Smith in his lucid dissent in the Court of Appeals pointed out that the decision reached there (and today affirmed here) blindly follows

---

[3]This court as recently as 1974, in *Ferrari v. Dist. Ct.*, 185 Colo. 136, 522 P.2d 105, in *obiter dictum*, noted that "our statute of limitations relating to death cases commences with the time of injury. C.R.S. 1963, 41-1-4. *See Fish v. Liley*, 120 Colo. 156, 208 P.2d 930 (1949)."

the words of Mr. Justice Kelley's opinion in *DeCaire v. Public Service Co.*, 173 Colo. 402, 479 P.2d 964 (1971) without the slightest regard for the rationale of that decision. *See Crownover v. Gleichman*, 38 Colo. App. 96, 554 P.2d 313, 316-17 (1976). *DeCaire* held that the statute of limitations did *not* commence to run at the time of the negligent act which ultimately gave rise to the claim for relief. Had the negligence activated the statute of limitations in *DeCaire*, the claim would have been barred. Thus the ratio decidendi of that case indicated a liberal attitude in interpreting the statute of limitations to avoid harsh and unjust results. The gist of *DeCaire* is its holding that a statute of limitations does not commence running until the tort giving rise to the claim has been completed by occurrence of the *injury* which is the sine qua non of the tort. In a wrongful death action that injury is the death, for there can be no wrongful death action unless there is a death.

To hold, as the majority holds today, that a statute of limitations begins to run to bar a wrongful death action, and may actually bar such an action, before the death occurs, is — in the language of Judge Smith — absurd.

Indeed, in the case before us, if the decedent had survived only four months longer than she did, the rule today adopted would have required holding that her husband's claim for her wrongful death was barred before she died. That rationale would require that we either hold the statute of limitations unconstitutional as a denial of due process or overrule our previous holdings that a statute of limitations cannot take away a claim for relief before the claimant has an opportunity for his day in court. *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970); *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372 (1944).

The majority opinion totally overlooks the fact that the malpractice claim and the wrongful death claim are two different claims held by different claimants. Instead the two claims are treated as if they were a single "cause of action." Moreover, the totally separate and different statute of limitations governing malpractice (Section 13-80-105, C.R.S. 1973) is treated as if it were the same statute that governs wrongful death. (Section 13-21-204, C.R.S. 1973). As a result of this confusion the two-year *malpractice* statute of limitations which commenced to run against the *wife's* claim for malpractice is held to have barred the *husband's* separate claim for wrongful death about four months after the death claim came into existence. So long as the wife lived, the husband had no control over *her* claim for malpractice. He could not have filed any action to recover general damages for her injuries, for that action belonged to her. Thus when the malpractice statute of limitations ran, it ran against *her claim* only. The effect of the majority opinion is to hold that the separate wrongful death claim *owned by her surviving spouse* is somehow barred about four months after her death by a statute which commenced running

against a totally separate claim owned by *her*. It is fundamental that the wrongful death statute created in the plaintiff husband a new claim for relief upon occurrence of the death. Thus the two-year statute of limitations governing wrongful death actions could not have commenced to run *against the husband* until his wife died. At her death, the two-year malpractice statute of limitations, which had been running against *her* malpractice claim, simply ceased to run against her. Since the husband had not had a malpractice claim (except possibly for loss of consortium) the malpractice statue of limitation could not have run to bar the action which did not yet exist — the wrongful death action.

Statutes of limitations are enacted for the salutary purposes of discouraging delay and forestalling prosecution of stale claims. For nearly all torts in Colorado, including most professional negligence, the statute of limitations is six years. (Section 13-80-110, C.R.S. 1973). Thus the medical profession already has been provided a privileged sanctuary by enactment of the special two-year statute of limitations covering professional negligence by physicians. Today's decision — with its adoption of a four-month limitation, on these facts, and complete immunity from suit if the malpractice victim dies two years or more after the malpractice, will not well serve the long-term interests of the healing arts or of sound public policy. Inordinately short statutes of limitations, or doubts regarding the meaning of such statutes, simply force attorneys to file actions as soon as possible rather than risk having them barred. Under those conditions, many actions are filed which would not have been filed had there been time for careful investigation and medical consultation.

In my view the majority have employed a statute intended as a shield against stale claims as a sword to cut off access to justice. As this Court recognized in *Owens v. Brochner, supra*: "To say to one who has been wronged, 'You had a remedy, but before the wrong was ascertainable (or available) to you, the law stripped you of your remedy,' makes a mockery of the law." (Parenthetical words added). 172 Colo. 525, 530, 474 P.2d 603, 606, quoting *Berry v. Branner*, 245 Ore. 307, 421 P.2d 996 (1966).