Patsi AYALA, Donna M. Ayala, Daisy M. Ayala, Dixon W. Ayala, by and through their mother and next of friend, Patsi AYALA, Sylvia Cook, Kyle D. Cook, Jr., Donna Cook, Angela Cook, by and through their mother and next friend, Sylvia Cook, Sheryl Lucero, Travis Lucero, by and through his mother and next of friend, Sheryl Lucero, Kraig N. Mead, Brian T. Mead, by and through their mother and next of friend, Pamela Mead, Alma B. Tucker, Gavin Litwiller, Sharyn Litwiller, Karen Greene, Vernon F. Lincoln, Loretta M. Patch, Rodney Allan Patch, Michael Kent Patch, Brenda Louise Patch, Stacey Marie Patch, by and through their mother and next of friend, Loretta M. Patch, Hugh W. Pierce, Alice B. Pierce, Cheryl Sharp, Jarret M. Sharp, Wendy I. Sharp, Glen W. Sharp, Jr., Amy E. Sharp, James E. Sharp, by and through their mother and/or next of friend Cheryl Sharp, Linda Vetter, Jennifer K. Vetter, Michael T. Vetter, by and through their mother and next of friend, Linda Vetter, Plaintiffs,

v.

JOY MANUFACTURING COMPANY, a Pennsylvania corporation, McJunkin Corporation, a West Virginia corporation, Bacharach Instrument Co., a division of Ambac Industries, Inc., a Delaware corporation, Service Machine Co., a West Virginia corporation, Defendants.

Myra Lynn GUTHRIE, Patricia Kathleen Guthrie, by and through their Mother and Next Friend, Judy GUTHRIE; Judy Guthrie, individually, Judy Guthrie, as Administratrix of the Estate of William Eugene Guthrie, deceased, Plaintiffs,

v.

JOY MANUFACTURING COMPANY, a Pennsylvania corporation, Mine Safety Appliances Co., a Pennsylvania corporation, McJunkin Corporation, a West Virginia corporation, Bacharach Instrument Co., a Division of Ambac Industries, Inc., a Delaware corporation, Service Machine Co., a West Virginia

corporation, United States of America, Department of Labor, Mine Safety & Health Administration, Defendants.

Civ. A. Nos. 82–JM–1907, 83–JM–580.

United States District Court,
D. Colorado.

Feb. 9, 1984.

William A. Trine, David W. Griffith, Williams, Trine, Greenstein & Griffith, P.C., Boulder, Colo., Stephen J. Pettit, Knight & Griffith, Cullman, Ala., Walter E. Brown, III, Stephen J. Worrell, Glenwood Springs, Colo., Laird T. Milburn, Dufford, Waldeck, Ruland, Wise & Milburn, Grand Junction, Colo., for plaintiffs.

Bruce A. Menk, Hall & Evans, Albert E. Zarlengo, Zarlengo, Mott & Zarlengo, Bruce F. Fest, Wood, Ris & Hames, Lowell Fortune, Fortune & Lawritson, P.C., Denver, Colo., Brenda Moss Green, Trial Atty., Torts Branch, Civ. Div., Dept. of Justice, Washington, D.C., Henry L. Solano, Asst. U.S. Atty., Denver, Colo., for defendants.

## ORDER

JOHN P. MOORE, District Judge.

THIS MATTER comes before the Court for determination of several motions to dismiss and for summary judgment. This action arises out of an accident which occurred on April 15, 1981, in a mine owned and operated by Mid-Continent Resources, Inc., near Redstone, Colorado. On that date, 15 miners were killed in a methane and coal explosion in the Dutch Creek No. 1 Mine. The complaints in the above-entitled actions are for the wrongful death of those miners.

Defendants in these actions are Joy Manufacturing Company ("Joy"), McJunkin Corporation ("McJunkin"), Bacharach Instrument Company ("Bacharach"), Service Machine Company ("Service Machine"), and the United States of America ("USA"). Defendants Joy, McJunkin, Bacharach, and Service Machine are the manufacturers of a continuous mining machine or component parts of that machine which allegedly caused the explosion. The claims against these defendants are products liability claims based on strict liability, negligence, and breach of express or implied warranty. The claim against the USA is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, and asserts that the mine inspection conducted by the Mine Safety and Health Administration was negligently performed.

There are currently pending five separate motions. Defendants Service Machine and Bacharach have each filed motions to dismiss the breach of warranty claims on the grounds that the Colorado Wrongful Death Act does not provide for claims based upon breach of warranty. These two defendants have also filed motions for partial summary judgment with respect to the breach of warranty claims. These motions assert that the breach of warranty claims are barred by the applicable statute of limitations. Defendant USA has filed a motion to dismiss or, in the alternative, for summary judgment. The USA contends that there is no cause of action against it for negligent inspection or, in the event that such a claim is actionable, that it is barred by the "discretionary function" exception to the Federal Tort Claims Act.

## I.

■ Turning first to the motions to dismiss the wrongful death claims based upon breach of warranty, this issue is a matter of statutory construction. The Colorado Wrongful Death Statute, Colo.Rev.Stat. § 13–21–202, states as follows:

When the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured.

The question presented is whether an asserted breach of warranty is a "wrongful act," "neglect," or "default" which can provide the basis for a wrongful death action. Defendants Service Machine and Bacharach maintain that the statute must be strictly construed, and because claims for breach of warranty are not explicitly authorized, such claims must be disallowed. Plaintiffs contend that the statute should be liberally construed, and the terms "wrongful act" and "default" are broad terms which encompass breaches of warranty.

In my opinion, plaintiffs state the correct standard for interpretation. It is true that some courts have held that claims for breach of warranty are not actionable under wrongful death statutes similar to Colorado's. *See Geohagan v. General Motors Corp.*, 291 Ala. 167, 279 So.2d 436 (1973); *Necktas v. General Motors Corp.*, 357 Mass. 546, 259 N.E.2d 234 (1970). The reasoning followed in those cases is that wrongful death actions are essentially punitive in nature, and because punitive damages are not recoverable for breaches of

contract, no claim for wrongful death could be maintained for breach of warranty. Although there are no Colorado cases which have addressed this exact issue, *Fish v. Liley*, 120 Colo. 156, 208 P.2d 930 (1949), makes clear the wrongful death remedy is not dependent upon the characterization of the action as either a tort or a contract action.

It is my conclusion that the better reasoned cases are those which hold that claims for breach of contract may be maintained as wrongful death actions. *Dagley v. Armstrong Rubber Co.*, 344 F.2d 245 (7th Cir.1965); *Hinton v. Republic Aviation Corp.*, 180 F.Supp. 31 (S.D.N.Y.1959); *Greco v. S.S. Kresge Co.*, 277 N.Y. 26, 12 N.E.2d 557 (1938). Colorado's wrongful death statute refers to universally inclusive "wrongful acts," not simply tortious acts. Consequently, I perceive no basis for distinguishing breaches of contractual duties from breaches of tort duties in determining whether such breaches provide the basis for a wrongful death suit. Therefore, the motions to dismiss of defendants Service Machine and Bacharach shall be denied.

## II.

■ Having concluded that the breach of warranty claims may be asserted under the wrongful death statute, it is then necessary to determine whether those claims are barred by the statute of limitations. Defendants Service Machine and Bacharach assert that the four-year statute of limitations for actions for breach of any contract for the sale of goods bars plaintiff's breach of warranty claims. Colo.Rev.Stat. § 4–2–725. According to that statute, such a cause of action accrues when the breach occurs, and for breach of warranty claims, the breach is deemed to occur at the time of delivery of the goods. Colo.Rev.Stat. § 4–2–725(2). Defendants argue that the goods which they supplied were delivered more than four years before October 5, 1982, the date of the filing of the *Ayala* complaint. Thus, according to defendants,

plaintiffs' breach of warranty claims are untimely.

Plaintiffs assert that the controlling statute of limitations is not the one supplied by the Uniform Commercial Code, but instead is Colo.Rev.Stat. § 13–80–127.5, the Colorado "products liability" statute of limitations. That statute provides as follows:

(1) Notwithstanding any other statutory provisions to the contrary, all actions except those governed by section 4–2–725, C.R.S. 1973, brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product shall be brought within three years after the claim for relief arises and not thereafter.

Plaintiffs contend that their claims fall within the language of this statute inasmuch as their claims against the manufacturers are products liability claims for personal injury. Plaintiffs characterize their breach of warranty claims as more in the nature of tort claims and not contractual ones.

Plaintiffs' arguments ignore the plain language of both Colo.Rev.Stat. § 4–2–725 and Colo.Rev.Stat. § 13–80–127.5. First of all, § 4–2–725 specifically refers to causes of action for breach of warranty. Moreover, it is disingenuous to characterize a breach of warranty claim as anything other than a cause of action based upon contract. The existence of warranties, the permissible methods of excluding warranties, and the damages recoverable for breach of warranties are governed by the Uniform Commercial Code.[1] Regardless of the historical

---

1. *See* Colo.Rev.Stat. §§ 4–2–316, 4–2–318, 4–2– 718, 4–2–719.

underpinnings of such matters, these issues are now considered to be governed by the contracts between buyers and sellers. According to the clear language of § 4–2–725, the statute of limitations applicable to causes of action for breach of contract for the sale of goods is four years running from the date of delivery.

Second, the three-year products liability statute explicitly excepts those causes of action governed by § 4–2–725. In general, causes of action based upon alleged defects in products will be governed by the three-year statute regardless of whether those claims are ones for negligence, strict liability, misrepresentation, or any other legal theory. The one exception is causes of action which fall under § 4–2–725. It appears that the Colorado legislature recognized that the Uniform Commercial Code provided a different limitations period for certain contract claims and left no doubt that § 4–2–725 is controlling as to those claims to which it applies.

Both parties have cited cases from other jurisdictions in support of their respective positions. Suffice to say that there is no uniform rule, as the language of each state's statute is unique. Although the reasoning of other decisions may shed some light on the issue, the resolution in the present case is ultimately governed by the language of Colorado's statutes.[2]

Based upon the foregoing, it is my opinion that plaintiffs' claims for breach of warranty are governed by Colo.Rev.Stat. § 4–2–725 and are, therefore, time barred. Accordingly, the motions of defendants Service Machine and Bacharach for partial summary judgment are granted.

## III.

Finally, there remains for determination the USA's motion to dismiss. The USA makes two basic arguments. First, it asserts that the enactment of the regulations contained in the Federal Mine Safety and Health Amendments Act of 1977, 30 U.S.C. § 801, et seq., ("Mine Safety Act") do not create a tort duty on the part of the government toward these plaintiffs. Second, the government contends that even if there is a tort duty, this action is barred by the "discretionary function" exception to the Federal Tort Claims Act. Plaintiffs rely upon the "Good Samaritan doctrine" as embodied in the Restatement (Second) of Torts § 324A for the establishment of the tort duty. That is, plaintiffs argue that the Mine Safety and Health Administration, having undertaken to inspect the mine, had a duty to carry out the inspection in a non-negligent manner. Plaintiffs further contend that the applicable regulations are sufficiently detailed so that the actual inspection procedures involve no policy-making activities and inspection does not fall within the discretionary function exception to the Federal Tort Claims Act.

Those courts which have considered the issue of the government's liability for inspection activities pursuant to the Mine Safety Act have concluded that there is no cause of action against the government for alleged negligence in the inspection of mines. *Raymer v. United States,* 660 F.2d 1136 (6th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982); *Taylor v. United States,* 521 F.Supp. 185 (W.D.Ky.1981); *McCreary v. United States,* 488 F.Supp. 538 (W.D.Pa.1980); *Mercer v. United States,* 460 F.Supp. 329 (S.D.Ohio 1978); *Mosley v. United States,* 456 F.Supp. 671 (E.D.Tenn.1978). According to the Federal Tort Claims Act and the analysis followed by this line of cases, state law determines the issue of the existence of a tort duty on the part of the USA.[3]

Plaintiffs' position, therefore, is that according to Colorado law, the USA may be held liable for negligent inspection. In *De-Caire v. Public Service Co.,* 173 Colo. 402,

**2.** There are no reported Colorado decisions which have addressed this issue.

**3.** Under 28 U.S.C. § 2674, liability may be imposed upon the United States "in the same manner and to the same extent as a private individu-

al would be liable." The applicable law regarding any issues of duty is the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

479 P.2d 964 (1971), Colorado adopted the "Good Samaritan doctrine" as expressed in the Restatement (Second) of Torts § 324A. Under that doctrine, the defendant in *DeCaire* was held liable for negligent inspection and servicing of a home heating system. Plaintiffs contend that where the USA, just as any private person, undertakes, gratuitously or for consideration, to render services to another—which it should recognize as necessary for the protection of a third person—it is subject to liability to that third person for physical harm resulting from his failure to exercise reasonable care in carrying out his undertaking. *See DeCaire v. Public Service Co.*, 479 P.2d at 967. According to plaintiffs, the government undertook the inspection of the mine, the inspection was for the purpose of protecting the miners' safety, and the miners were entitled to rely on the inspection as assurance the working conditions were safe. Therefore, plaintiffs argue that if the inspection was performed negligently, the USA is subject to suit.

The case law from other jurisdictions, however, does not support plaintiff's position. In *McCreary v. United States, supra,* the court, interpreting Pennsylvania law, found that the government's inspection of a mine does not constitute the "rendering of services" to another as required by Restatement § 324A. According to the opinion in *McCreary,* a regulatory inspection is for the benefit of the government and does not create a duty toward third persons. Similarly, in *Taylor v. United States, supra,* the court reasoned that under the statutory scheme of the Mine Safety Act and the applicable regulations, compliance with the regulations is the duty of the mine operator and not the government; furthermore, the court held that a government inspection does not satisfy the "rendering services" element of Restatement § 324A. *Accord, Mercer v. United States, supra.* In *Raymer v. United States, supra,* discussed at length by both plaintiffs and defendant, it was held that the plaintiffs had failed to prove liability on the part of the United States because they had neither pled nor proved that they were entitled to rely upon the government's inspection of the mine.

■ I recognize that none of these decisions are binding as they are each dependent upon the state law where the act or omission occurred. Nevertheless, the reasoning of these decisions is sound. The Mine Safety Act places the primary responsibility for providing a safe and healthful working environment on the mine operator. The government, by enacting health and safety regulations, does not thereby become an insurer for the neglect of others simply because it failed to insure compliance with established standards of conduct. *Zabala Clemente v. United States,* 567 F.2d 1140 (1st Cir.1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *See also United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

■ In addition, there is no private cause of action for violations of the Mine Health Safety Act. *Raymer v. United States, supra; McCreary v. United States, supra.* Plaintiffs here are not relying on an implied cause of action theory; nevertheless, the fact that no civil remedy was provided for violations of the Act is a factor which militates against the imposition of tort liability upon the government or government officials for alleged negligence in the performance of their statutory duties. *See Quintano v. Industrial Commission,* 178 Colo. 131, 495 P.2d 1137 (1972).

■ In short, it is my conclusion that the inspection procedures of the Mine Safety Act create no tort duty on the part of the government toward these plaintiffs' decedents. Because I have concluded that there is no tort duty, it is not necessary to determine whether the inspection process falls within the discretionary function exception of the Federal Tort Claims Act.

Accordingly, it is

ORDERED that defendant Service Machine Company's motion for leave to file reply brief (filed December 19, 1983) is granted.

FURTHER ORDERED that the motions to dismiss of defendants Service Machine and Bacharach are denied.

FURTHER ORDERED that the motions for partial summary judgment of defendants Service Machine and Bacharach are granted, and the breach of warranty claims asserted against them are dismissed.

FURTHER ORDERED that the USA's motion to dismiss [4] is granted.

[4]. The USA's motion to dismiss or, in the alternative, for summary judgment, is decided under Fed.R.Civ.P. 12(b)(6).